STAMMER and others, Copartners, Respondents, vs. MULVANEY, Appellant.*

*May 6—June 2, 1953.*

* Motion for rehearing denied, with $25 costs, on September 11, 1953.

For the appellant there was a brief by *Curley & Sheedy* of Milwaukee, and oral argument by *Patrick T. Sheedy.*

For the respondents there was a brief by *Benton, Bosser, Becker & Fulton,* attorneys, and *Franklin L. Nehs* of counsel, all of Appleton, and oral argument by *Mr. Nehs* and *Mr. David L. Fulton.*

BROWN, J.    The trial of the counterclaim proceeded on the theory held by plaintiffs and by the court that defendant's cause of action arose out of the sale by plaintiffs of a 300-gallon steel septic tank and plaintiffs were not liable for the breach of any promise or warranty concerning it because defendant had not complied with sec. 121.49, Stats., and notified plaintiffs seasonably of the defect and of defendant's intention to claim damages. *Marsh Wood Products Co. v. Babcock & Wilcox Co.* (1932), 207 Wis. 209, 240 N. W. 392; *Ace Engineering Co. v. West Bend Malting Co.* (1943), 244 Wis. 91, 11 N. W. (2d) 627. Under the circumstances of this case we are of the opinion that sec. 121.49 is not applicable because ch. 121, Stats. (the Uniform Sales Act), deals with the sales of personal property and we are unable to find that the present contract was for a sale. Plaintiffs' bid for the plumbing contract is most informal. It lists the bathroom and kitchen fixtures which they propose to furnish and "1 300-gal. septic tank" with "all sewer pipe and fittings to septic tank." There are no prices quoted for any item except "1 shower stall at $100, cut of same to follow." The bid concludes with the notation "All labor for this hookup" and a lump-sum price of $1,650 for material and labor. It is hard to conceive of a contract of sale, or a sale, where no price

has been put on the article sold. Plaintiffs refer us to numerous cases where certain articles were to be furnished, installed, in the buyer's establishment, such as *Ace Engineering Co. Case, supra; Simonz v. Brockman* (1946), 249 Wis. 50, 23 N. W. (2d) 464; and *Lumbermens Mut. Cas. Co. v. S. Morgan Smith Co.* (1947), 251 Wis. 218, 28 N. W. (2d) 343. Where an article is bought, the fact that the seller may have to install it does not prevent there being a sale of goods, as such cases show, but a contract to furnish labor and material on a certain job does not bring into existence a sale of the material so supplied within the meaning of ch. 121, Stats.

"*Special Materials for Construction of Building.*—The courts have consistently held that contracts to do certain work on buildings and to supply the requisite material are not to be regarded as contracts for the sale of such material so as to come within provisions of the statute of frauds governing sales of personalty." 49 Am. Jur., Statute of Frauds, p. 576, sec. 257.

"A contract for work, labor, and materials is not a·contract of sale within the statute of frauds." 37 C. J. S., Statute of Frauds, p. 627, sec. 141.

"A building or construction contract, or as it is otherwise termed, a working contract, is one under which work or labor is to be performed in the erection, construction, or repair of some building, edifice, structure, or other work." 9 C. J., Building and Construction Contracts, p. 693, sec. 1.

"Building contracts are not within the provision of the statute of frauds relating to the sale of merchandise, etc., . . . ." 9 C. J., Idem, p. 699, sec. 13.

In the *Ace Engineering Co. Case, supra,* the plaintiff sued to recover a balance due on the sale of an oil burner; in *Simonz v. Brockman, supra,* the complaint alleged that defendant was indebted to plaintiff for goods, wares, and merchandise sold and delivered. In the *Lumbermens Mut. Cas. Co. Case, supra,* it was not questioned that the transaction

came under the Sales Act. That point was conceded which in the present case must be proved. Reference to the pleadings and the exhibits in the *Lumbermens Case, supra,* show that the S. Morgan Smith Company contracted that it "shall furnish equipment as hereinafter noted." The contract refers to "equipment to be purchased." The complaint states that the defendant contracted "for furnishing, delivering, and supervising the installation at Kaukauna, Wisconsin, of certain hydroelectric generation equipment, consisting of" etc., and alleges the failure of the equipment to perform its functions. Under such allegations that case was properly treated as within sec. 121.49, Stats., but it is quite different from a building contract such as the one in which we are now interested, where the materials to be furnished were incidental to the work to be performed. The difference seems to have been appreciated by plaintiffs, themselves, at the time their complaint was drafted, for they sought recovery for "labor and material performed and furnished" rather than for a sale of goods as pleaded in the authorities which they ask us to follow. We conclude that the contract between the parties was not one of sale and therefore defendant's failure to give plaintiffs the notice specified in sec. 121.49 does not bar him from recovering damages caused by plaintiffs' negligent construction of the cesspool as alleged in the counterclaim.

The instruction of the court on the subject of the notice required by sec. 121.49, Stats., and the jury's answer that notice had not been given by defendant to plaintiffs that the former intended to claim damages, was erroneous because such statute is not involved. Ordinarily such an instruction and question would have been prejudicial but they are not so in this case because defendant's evidence on damages was received and still fell short of supporting any award. If the jury had allowed any damages they would have had to be set aside because of lack of evidence to support them. As a part of their plumbing contract plaintiffs installed a tank

which did not meet the legal standard but defendant has not paid for it and so has no payment to recover. Defendant hired another firm to replace the insufficient tank but instead of ordering a tank of 375-gallon capacity which would have met legal requirements, defendant procured a 700-gallon tank and constructed seepage trenches 300 feet long leading from it instead of the 30 to 35-foot trenches which served plaintiffs' tank. (Construction of trenches was no part of plaintiffs' contract.) Defendant's proof showed what the new work cost but there was no separation of charges by which it can be determined whether defendant would have to pay more for putting in a legal tank of 375 gallons than he had contracted to pay plaintiffs. Evidence of what defendant paid for a 700-gallon concrete tank, installed, and the construction of a 300-foot trench, quite outside plaintiffs' contract, and the landscaping incident to such a project is not effective to prove damage sustained by reason of plaintiffs' installation of a 300 rather than a 375-gallon steel tank. The counterclaim must be dismissed for failure of proof and therefore defendant has not been prejudiced by its dismissal upon another theory even though we consider such theory was erroneous.

The trial court considered that plaintiffs' account was proved as a matter of law and gave judgment for $731.71, the amount sued for, with interest and costs, amounting in all to $865.96. Part of this bill is attributable to the furnishing and installation of an illegal septic tank. There was evidence from which it appears that the tank, with some drums welded to it, cost $54 and the labor of putting it in the ground and connecting it to the plumbing system was $17.40. Plaintiffs cannot recover compensation for their effort to furnish defendant with a sewage-disposal plant prohibited by law. As the charges for this part of the work can be separated from the remainder of the bill they will be so separated and disallowed, resulting in a reduction of plaintiffs' account from $731.71 to $660.31, for which judgment should be entered.

The damages, then, were unliquidated and interest should not be allowed on such balance.

*By the Court.*—Judgment modified to award plaintiffs $660.31 damages and the costs and disbursements of trial, as allowed by the trial court at $73.30, and, as so modified, affirmed. No costs allowed to either party on the appeal.

* Motion for rehearing denied, without costs, on September 11, 1953.